# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (Settlement Agreement) is entered into as of December __, 2016, by and between U.S. Bank National Association (U.S. Bank), on the one hand, and Jose Luis Aguayo, individually and on behalf of the Certified Class, (Plaintiff), on the other hand. The settling parties are referred to collectively as the Parties or individually as a Party.

## I. RECITALS

1.01. Plaintiff filed a class action complaint against U.S. Bank in the San Diego County Superior Court in July 2008. U.S. Bank removed the case to the U.S. District Court for the Southern District of California pursuant to the Class Action Fairness Act. The operative complaint is Plaintiff's First Amended Complaint, filed in January 2013 (the Action). The Action asserted claims for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and asked for restitution and injunctive and declaratory relief, in connection with alleged violations of the Rees-Levering Automobile Sales Finance Act, Cal. Civ. Code §§ 2981 *et seq.*

1.02. In September 2009, the Court dismissed Plaintiff's claims, finding that the National Bank Act and regulations promulgated thereunder preempted the application of California law to Plaintiff's claims. Plaintiff appealed to the Ninth Circuit, which reversed, *Aguayo v. U.S. Bank,* 653 F.3d 912 (9th Cir. 2011). U.S. Bank petitioned for rehearing and rehearing *en banc*, which the Ninth Circuit denied. Then U.S. Bank petitioned the U.S. Supreme Court for certiorari, which was also denied.

1.03. In October 2012, the Ninth Circuit issued the Mandate returning the Action to the Southern District of California. U.S. Bank again moved for dismissal of Plaintiff's claims based on federal preemption in November 2012. The Court denied that motion in September 2013, and, after briefing, also denied U.S. Bank's

motion to reconsider. The parties undertook substantial investigation and formal discovery, including reviewing thousands of pages of documents, depositions on both sides, and retaining experts on both sides. The parties attempted a full-day mediation with the Hon. Judge James Warren (Ret.) of JAMS in April 2014, which proved unsuccessful. The parties also attended a mandatory settlement conference with U.S. Magistrate Judge Barbara Major in November 2014, which was unsuccessful. U.S. Bank moved for summary judgment in June 2014, which the Court denied.

1.04. Plaintiff moved for class certification in May 2014. After extensive briefing and vigorous opposition by U.S. Bank, in January 2015 the Court certified a Class (as defined in Section 2.02 below). After briefing, the Court denied U.S. Bank's motion for reconsideration. U.S. Bank petitioned the Ninth Circuit for permissive review of the class certification order pursuant to Federal Rule of Civil Procedure 23(f), which Plaintiff opposed. After the Ninth Circuit denied review, Plaintiff gave class members Class Notice by first-class mail and the opportunity to opt out. Notice was completed in December 2015.

1.05. To comply with deadlines in the pre-trial order, Plaintiff moved for partial summary judgment as to U.S. Bank's liability in December 2014. Due to the rule against one-way intervention, however, Plaintiff asked the Court to delay ruling until after the Class was certified and notified. In May 2016, after requesting additional briefing from both parties, the Court granted Plaintiff's summary judgment motion, ruling that U.S. Bank's notices of intent to dispose of repossessed vehicles (NOIs) did not comply with Civil Code § 2983.2(a)(2). Consequently, the Court determined that U.S. Bank's practices of collecting and attempting to collect Deficiency Balance Payments from Class Members was unlawful. The Court entered declaratory judgment, stating that U.S. Bank's deficiency claims against Class Members were invalid, void and unenforceable and

that Class Members are not liable to U.S. Bank for the Deficiency Balances. Additionally, the Court entered an injunction against U.S. Bank, prohibiting it from collecting any further Deficiency Balances from Class Members.

1.06. At that point in the Action, the only issue remaining to be determined at trial was the appropriate measure of restitution to be returned to the Class, including whether the Class was entitled to recover interest or profits on their Deficiency Balance Payments. The Court ordered briefing on that issue. In August 2016, the Court ruled that, under California law, Plaintiff and Class Members were entitled to the profits that U.S. Bank earned from their Deficiency Balance Payments, to the extent that Plaintiff could produce, at trial, evidence permitting a reasonable approximation of the amount of the wrongful gain.

1.07. Following that ruling, in October 2016 the Parties participated in a second settlement conference with Judge Major. At the conclusion of the settlement conference the Parties reached an agreement as to material terms of a settlement, subject to approval of the Court and documentation in this Settlement Agreement, among other things.

1.08. The Parties are willing to enter into this Settlement Agreement to fully and finally settle the Class claims asserted in this litigation, and which could have been asserted in this litigation, and to avoid the attendant expense, risks, difficulties, delays and uncertainties of continued litigation.

1.09. Plaintiff's Counsel have fully analyzed and evaluated the merits of the Parties' contentions and this settlement as it impacts the Parties, including the individual members of the Certified Class. Plaintiff and Plaintiff's Counsel have considered those factors, along with the risks of continued litigation and the likelihood that the Action, if not settled now, would continue to be protracted and expensive. Plaintiff's Counsel also considered that if Plaintiff was successful at trial, U.S. Bank was likely to appeal the decision, which would cause further risk

and delay. In light of these and other factors, Plaintiff and Plaintiff's Counsel believe that this Settlement Agreement provides fair, reasonable, and adequate relief to the Class, and is in the best interests of the Class as a whole.

1.10. The Parties desire to settle the claims of Plaintiff and the Class on the terms and conditions set forth in this Settlement Agreement to finally resolve this matter, including any appeals.

1.11. The Parties have conducted extensive settlement negotiations before reaching this Settlement Agreement. They have had two half-day settlement conferences with Judge Major, in November 2014 and October 2016, and a full-day mediation with Judge Warren (Ret.) of JAMS in April 2014.

1.12. In consideration of the covenants and agreements set forth herein, Plaintiff, the Certified Class, and U.S. Bank, themselves and through their undersigned counsel, agree to the settlement of the Action, subject to Court approval, under the following terms and conditions.

## II. DEFINED TERMS

As used in this Settlement Agreement, the following terms have the meanings set forth below:

2.01. "Agreement" or "Settlement Agreement" means this Settlement Agreement.

2.02. "Class" or "Certified Class" means all California consumer residents (who purchased a motor vehicle for use primarily for personal or household purposes and whose loan documentation does not include an arbitration clause) to whom U.S. Bank sent post-repossession notices of intent to dispose (NOIs) between August 1, 2004 and April 22, 2014, whose vehicles were sold or otherwise disposed of after repossession or voluntary surrender, who U.S. Bank asserts are liable to it for a deficiency balance, against whom U.S. Bank has not

obtained a judgment, and who have not had U.S. Bank's deficiency claim discharged in bankruptcy.

2.03. "Class Member" or "Certified Class Member" means those persons who fall within the definition of the Certified Class who have not timely opted out of the Class.

2.04. "Conditional Sale Contract" has the meaning set forth in California Civil Code §2981(a).

2.05. "Court" means the United States District Court for the Southern District of California.

2.06. "Consumer Reporting Agencies" means Equifax, Experian and TransUnion.

2.07. "Deficiency Balance" means the outstanding balance of a Conditional Sale Contract account after sale of the collateral following repossession and application of the sale proceeds, including interest and principal and any other charges or fees assessed before or after repossession.

2.08. "Deficiency Balance Payment" means any payment made by Class Members on their Deficiency Balance.

2.09. "Distribution Date" means ten (10) business days after the date of Final Approval.

2.10. "Effective Date" means the date the Settlement Agreement has been fully executed.

2.11. "Final Approval" means the fifth business day after which all of the following events have occurred:  (a) The Court has entered, without material change, the Final Approval Order attached hereto as **Exhibit C** and final judgment; and (b) The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement and judgment is affirmed on appeal or review without material change, no other appeal or petition

for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal or certiorari could be taken has finally expired and relief from a failure to file same is not available.

2.12. "Final Approval Hearing" or "Fairness Hearing" means the hearing set by the Court for purposes of considering whether to grant Final Approval of the proposed Settlement.

2.13. "Monetary Relief" means the relief described in Sections 3.03 and 3.12 below.

2.14. "NOI" means a written notice of intent to dispose of a repossessed or surrendered motor vehicle within the meaning of California Civil Code § 2983.2.

2.15. "Parties" means U.S. Bank, the Plaintiff, and the members of the Certified Class.

2.16. "Plaintiff" or "Class Representative" means Jose Luis Aguayo.

2.17. "Plaintiff's Counsel" or "Class Counsel" means Andrew J. Ogilvie, Carol M. Brewer and Anderson, Ogilvie & Brewer LLP; Michael E. Lindsey and The Law Office of Michael E. Lindsey; and F. Paul Bland, Jr. and Public Justice, P.C.

2.18. "Preliminary Approval" of this Settlement Agreement means that the Court has entered an order, substantially in the form attached as **Exhibit A**, preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing notice to the Certified Class.

2.19. "Plan of Distribution" means the plan to distribute $4,415,000 to approximately 640 Refund Eligible Class Members, who have collectively paid U.S. Bank approximately $2,334,139 in Deficiency Balance Payments.

2.20. "Refund Eligible Class Members" are those members of the Certified Class who have made one or more Deficiency Balance Payments to U.S. Bank that were not reversed or offset. Persons whose accounts show a zero or negative

balance on U.S. Bank's deficiency payments records are not "Refund Eligible Class Members."

2.21. "Released Parties" means U.S. Bank and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors, representatives and assigns, individually, jointly and severally.

2.22. "Released Claims" means any and all claims, liens, demands, causes of action, obligations, damages and liabilities, known or unknown, that Certified Class Members had in the past, now have, or may have in the future against the Released Parties, that were or could have been raised based upon the facts alleged in the Action against the Released Parties or that arise directly or indirectly out of any such claims; this release includes, but is not limited to, any claims arising out of U.S. Bank's sending of an NOI, the content of the NOI, the assertion of a deficiency following repossession, the collection or attempted collection of the deficiency, and the reporting to credit bureaus of the amounts remaining on the account after repossession. The Release binds the Class Members as well as anyone purporting to act on their behalf, including their heirs, spouses, executors, administrators, successors, assigns or agents. The Released Claims include all claimed or unclaimed compensatory, statutory, consequential or punitive damages, as well as all claims for equitable, declaratory or injunctive relief. Released Claims also include all interest, costs and attorneys' fees.

2.23. "Settlement Administrator" means Rust Consulting, Inc.

2.24. "Settlement Notice" means the notice of pendency and settlement of class action substantially in the form attached hereto as **Exhibit B**.

2.25. "U.S. Bank" means U.S. Bank National Association.

2.26. "U.S. Bank's Counsel" means the law firm of Morrison & Foerster LLP.

2.27. As used herein, the plural of any of the above defined terms includes the singular thereof and the singular of any defined term includes the plural thereof, as the case may be.

III. **GENERAL TERMS OF THE SETTLEMENT**

3.01. If Final Approval is not obtained pursuant to the terms of this Settlement Agreement, or if the Settlement Agreement is terminated, for any reason, the Action will continue to proceed as prior to this Settlement Agreement. The Action will remain pending in the U.S. District Court for the Southern District of California during the approval process agreed herein.

3.02. Preliminary Approval. Along with the application for Preliminary Approval of this Settlement Agreement, Plaintiff shall apply to the Court for the entry of an order, in a form to be mutually agreed by the Parties, granting Preliminary Approval of the settlement, and U.S. Bank shall not oppose the request for approval made in accordance with this Settlement Agreement.

3.03. **Establishment of Funding for Settlement Payments and Administration.** Within ten (10) business days of Final Approval, U.S. Bank shall establish a fund in amount of $4,415,000, to be administered by the Settlement Administrator, to make the distributions to Refund Eligible Class Members in accordance with the Plan of Distribution.

3.04. **Incentive Award**. In addition to the payments to Refund Eligible Class Members set forth in Section 3.03 above, U.S. Bank will, subject to Court approval, pay an incentive award of no more than $10,000.00 to Plaintiff Jose Aguayo.

3.05. **Retention of Settlement Administrator**. U.S. Bank shall retain Rust Consulting, Inc. as the Settlement Administrator to provide the Settlement Notice

to the Certified Class, maintain and administer the Settlement Fund, maintain the Class List and related records, process checks mailed to Certified Class Members, and respond to inquiries from Class Members about the benefits and relief called for by this Settlement Agreement.

3.06. **Costs of Settlement Administration**. In addition to the payments set forth in Sections 3.03 and 3.04 above, U.S. Bank will negotiate and pay the reasonable costs of notice and administration of the Settlement Administrator, Rust Consulting, Inc.

3.07**. Identifying Certified Class Members**. If it has not already done so, within 20 business days after Preliminary Approval, U.S. Bank will provide the Settlement Administrator and Class Counsel with a consolidated spreadsheet, in electronic form, containing the following: a list of the names, last known addresses, Social Security Numbers, and account numbers of all Class Members, and separately for each Refund Eligible Class Member, the date (by month) and amount of each Deficiency Balance Payment made by that person and the total of that person's Deficiency Balance Payments. Upon receipt of the consolidated spreadsheet, the Settlement Administrator shall conduct a National Change of Address search to verify the most recent mailing address of all Class Members.

3.08. **Settlement Notice To Be Sent To Certified Class Members**. Within 30 days after receipt of the consolidated spreadsheet referenced in Section 3.07, the Settlement Administrator shall mail to all Class Members by first-class mail a Settlement Notice, in accordance with Section 2.23 above. As set forth below, Class Members shall have the right to object to the proposed settlement, under the procedures and deadlines set forth within the Settlement Notice. However, as the Class opt-out period expired in 2015, after the Certified Class was given Class Notice, all Class Members shall be bound by the terms of this Settlement Agreement, including the release of claims contained herein.

3.09. **CAFA Notice**. U.S. Bank shall send Class Action Fairness Act of 2005 Notice to the appropriate federal and state officials identified in 28 U.S.C. § 1715(a), not later than ten days after this Settlement Agreement is filed with the Court. U.S. Bank shall bear the cost of this Notice.

3.10. **Objections by Class Members.**

(a) Any Certified Class Member (other than Plaintiff) may object to this Settlement Agreement by filing with the Court a notice of their intention to object. The notice must set forth each objection and the basis therefore and must contain the objecting Class Member's verification that he or she is a Class Member and any papers offered in support of the Class Member's objection. Objections must be filed with the Court and served on Plaintiff's Counsel and U.S. Bank's Counsel no later than 28 days before the Final Approval Hearing and must state whether the Class Member or the Class Member's attorney intends to appear at the Final Approval Hearing. Any attorney who intends to appear at the Final Approval Hearing must enter a written Notice of Appearance of Counsel with the Clerk of Court no later than the date set by the Court in its order preliminarily approving the Settlement Agreement.

(b) All responses to Objections submitted pursuant to Section 3.10 (a) shall be filed by 10 days before the Final Approval Hearing.

3.11. **Final Approval.** Plaintiff's Counsel shall request a date for the Final Approval Hearing at the time of the hearing for Preliminary Approval. At least 43 days prior to the Final Approval Hearing, Plaintiffs' Counsel shall file a motion for final approval of the Settlement, for an award of attorneys' fees and costs, and for an incentive award to Plaintiff. The motion will request the Court to grant final approval of the settlement substantially in the form attached hereto as **Exhibit C** and to enter final judgment in accordance with this Settlement Agreement. U.S. Bank shall not oppose a request for final approval made in accordance with this

Settlement Agreement. Pursuant to Section 5.01 below, the final judgment will order the dismissal of the Action.

    3.12. **Monetary Relief to Certified Class Members: Plan of Distribution.**

    (a) On the Distribution Date or as soon thereafter as practicable, the Settlement Administrator shall mail checks to Refund Eligible Class Members. The check to each Refund Eligible Class Member will consist of the refund of 100% of that person's net total of Deficiency Balance Payments, plus their proportionate share of certain additional monetary recovery as calculated by Class Counsel's experts and consultants. Refund Eligible Class Members who made deficiency payments early in the class period will recover more than people who paid the same amount later in the class period. Payments sent by the Settlement Administrator that exceed $10,000 shall be mailed by Certified Mail.

    (b) Any settlement payment that is returned as non-deliverable with a forwarding address shall be re-mailed by the Settlement Administrator to such forwarding address. If any Settlement Payments are returned as non-deliverable without a forwarding address, the Settlement Administrator shall conduct an automated skip trace to locate a valid address for the intended Refund Eligible Class Member, and shall promptly re-mail the settlement payment to any Class Members for whom a new address is identified.

    (c) Refund Eligible Class Members must cash their checks within 120 days after issuance. Refund Eligible Class Members may request the Settlement Administrator to issue new checks during this time if they lose or misplace their original check. However, if new checks are issued they must be cashed within 120 days after the original check was issued. If Refund Eligible Class Members' checks are not timely cashed they shall no longer be eligible to receive a refund, but shall be entitled to the other relief provided by U.S. Bank in this Settlement Agreement,

and shall otherwise be bound by the Settlement Agreement and any judgment entered in the Action.

(d) If there are co-borrowers on an account, any payment pursuant to Section 3.12(a) shall be by check made payable to both co-borrowers, and the check will be mailed to the first named borrower.

(e) In the event of a dispute between co-borrowers, or if a co-borrower cannot be found, or if a Refund Eligible Class Member has died, or some other complication arises in connection with the issuance or cashing of a refund check, the Settlement Administrator shall provide written notice of the issue to Class Counsel and U.S. Bank's Counsel. Absent specific instructions from Class Counsel and U.S. Bank's Counsel, the Settlement Administrator shall proceed to resolve such dispute using its best practices and procedures to ensure that the funds are fairly and properly distributed to the person or persons who are entitled to receive them, or to their representatives if such persons are deceased.

(f) U.S. Bank will not issue Form 1099s to the IRS as to any Class Member in connection with the refund of Deficiency Balance Payments. However, in its discretion, U.S. Bank may issue Form 1099s to Refund Eligible Class Members for the amount of their checks that exceeds the amount of Deficiency Balance Payments that Class Members made to U.S. Bank.

3.13. **Non-Monetary Relief To Certified Class Members**.

(a) On or before the Distribution Date, U.S. Bank shall file with the Court a declaration under penalty of perjury stating that it has reduced to $0 the Deficiency Balances on all Certified Class Members' accounts with U.S. Bank. U.S. Bank agrees not to issue Form 1099s to the IRS as to any Certified Class Member in connection with this reduction to $0 of the Deficiency Balances on Class Members' accounts.

(b) On or before the Distribution Date, U.S. Bank will also file with the Court a declaration under penalty of perjury stating that it has (i) identified any Certified Class Members to whom it has issued an IRS Form 1099-C with regard to the reduction to $0 of a Deficiency Balance and (ii) as to such Certified Class Members, issued corrective Form 1099s.

(c) On or before the Distribution Date, U.S. Bank shall confirm that it has submitted requests electronically to the Consumer Reporting Agencies to which it reports, asking them, with regard to the Conditional Sale Contract accounts at issue in the Action, to delete the entire U.S. Bank tradeline on Certified Class Members' credit reports. In the event that Plaintiff's Counsel or a Certified Class Member notifies U.S. Bank that an account subject to this Settlement Agreement nevertheless is being reported on a Certified Class Member's credit report, U.S. Bank agrees that it will make one additional request to the Consumer Reporting Agencies to delete the tradeline. U.S. Bank shall respond to any inquiries from Certified Class Members regarding their accounts by informing the Certified Class Member that their account balance is $0. In addition, U.S. Bank shall upon individual request, and one time only, provide Certified Class Members with a letter to that effect.

(d) To the extent that U.S. Bank has not already done so, immediately upon signing this Settlement Agreement, U.S. Bank and its agents and assignees (including any lawyers or debt collection agencies) shall cease collection activities on all Certified Class Members' accounts, including the taking of judgments and filing of lawsuits. In addition, to the extent it has not already done so, U.S. Bank shall inform outside counsel and debt collection agencies holding such accounts that they have been withdrawn from collection, and that collection and any credit reporting must cease immediately.

3.14. **Total Class Members, Collections, and Deficiency Balances**. After diligent investigation of its records, U.S. Bank affirms that as of December 2016, there are approximately 2,136 accounts of members of the Certified Class, whose collective Deficiency Balances total approximately $21,604,477. U.S. Bank further affirms that U.S. Bank has collected approximately $2,334,139 from Certified Class Members. U.S. Bank will provide a declaration to support the figures set forth in this Section prior to the application for Preliminary Approval.

3.15. **Plaintiff's Counsel's Attorneys' Fees, Expenses and Costs**.

(a) U.S. Bank agrees not to object to or oppose an application by Plaintiff's Counsel for attorneys' fees, expenses and costs made in accordance with this Settlement Agreement that does not exceed $2,400,000. U.S. Bank also agrees not to appeal the Court's ruling on such attorneys' fees/costs/expenses application, provided the amount awarded does not exceed that amount. Plaintiff's Counsel represent and agree that such amount covers all fees, expenses and costs incurred or claimed by any and all counsel who worked on the Action, and they shall not be entitled to and will not seek, either from U.S. Bank or from any other party, person or entity, attorneys' fees, expenses or costs (including for experts) or other compensation for attorneys' services, expenses or costs in the Action, or in connection with this Settlement and Settlement Agreement, which exceeds this amount. Plaintiff's Counsel agree that such an award shall compensate them for all legal work, expenses and costs in, or in any way related to, the Action, up to and including the date of Final Approval, as well as for all legal work, expenses and costs that may be incurred in the Action after the date of Final Approval.

(b) Any application for, or award of, attorneys' fees, expenses and costs that exceeds $2,400,000 shall, at U.S. Bank's sole discretion, be grounds for immediate termination of this Settlement Agreement.

(c) No later than the Distribution Date, and subject to approval by the Court, U.S. Bank shall pay or cause to be paid any attorneys' fees and costs awarded to Plaintiff's Counsel, by wiring funds to the Settlement Administrator. The Settlement Administrator will then distribute those funds based on Plaintiff's Counsel's agreement and joint instruction.

(d) Except as provided in subsection (b) of this section regarding U.S. Bank's termination rights, Plaintiff's Counsel and Plaintiff agree that this Settlement Agreement is not conditioned on the Court approving an award of attorneys' fees, expenses and costs in the amount requested.

3.16. **Payment to Plaintiff**. On or before the Distribution Date, and subject to approval by the Court, U.S. Bank shall pay or cause to be paid no more than $10,000 to Plaintiff and Class Representative Jose Aguayo as an incentive award for his service in the litigation and as full and final satisfaction of any and all of his claims, which are released as set forth in Section IV below, by wiring funds to the Settlement Administrator. The Settlement Administrator will then distribute those funds per Plaintiff's Counsel's agreement and joint instruction.

3.17. **Distribution of Residue.** The Settlement Administrator shall notify U.S. Bank and Plaintiff's Counsel, in writing, 135 days after the Distribution Date, of: the number of Class Members to whom checks were sent, the total dollar amount of the checks, and the total dollar amount of unclaimed funds and uncashed checks. The residue, if any, of unclaimed funds and uncashed checks distributed pursuant to the terms of this Settlement Agreement shall be used to make a contribution to the following charitable organizations: East Bay Community Law Center and Legal Aid Society of San Diego, subject to approval of the Court.

3.18. **Certificate by Settlement Administrator.** Within 30 days after the final distribution of all portions of the settlement, U.S. Bank shall obtain from the

Settlement Administrator and file a declaration certifying to the Court that the distributions provided for by this Settlement Agreement have all been made.

## IV. RELEASES

4.01. **Release Of Claims**. Upon the Effective Date, Plaintiff and each Class Member acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from all Released Claims. Subject to the Court's approval, all Class Members shall be bound by this Settlement Agreement and all of their Released Claims shall be dismissed with prejudice and released as against the Released Parties, even if they never received actual notice of the Settlement prior to the Final Approval Hearing.

4.02. **Additional Release by Named Plaintiff**. In addition to the Released Claims by the members of the Certified Class, Plaintiff Jose Aguayo and his spouse, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from all claims relating to any and all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, whether arising under local, state or federal law, whether by Constitution, statute (including, but not limited to, the Rees-Levering Act), tort, contract, common law or equity or otherwise, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent, that have been or could have been asserted against the Released Parties by the Plaintiff on or any time prior to the Effective

Date. These additional Claims released by the Plaintiff include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged based on the facts forming the basis for this Action. Released Claims further include interest, costs and attorneys' fees arising out of any of the claims asserted or that could have been asserted.

4.03. **Waiver of California Civil Code Section 1542.** Plaintiff, Jose Aguayo, acknowledges that he is aware that he may hereafter discover facts in addition to or different from those that he or Plaintiff's Counsel now know or believe to be true with respect to the subject matter of these releases, but it is his intention to, and he does hereby, upon the Effective Date of this Settlement Agreement, fully, finally and forever settles and releases any and all of the claims described in Sections 4.01 and 4.02 above, without regard to the subsequent discovery or existence of such different or additional facts. Plaintiff waives any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Plaintiff and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law relating to limitations on releases.

## V. JUDGMENT

5.01. **Final Judgment Entered Pursuant To This Settlement Agreement**. By entering into this Settlement Agreement, the Parties accept all of its terms. The final judgment will include a dismissal with prejudice of the Action. If Final Approval is not obtained pursuant to the terms of this Settlement Agreement for any reason, the Action will continue to proceed. In that event the Settlement Agreement will be void.

5.02. **Court Retains Jurisdiction After Entry of Final Judgment**. Without affecting the finality of the final judgment in any way, the Court shall retain jurisdiction over:

(a) any other action necessary to implement the terms of the final judgment and/or this Settlement Agreement;

(b) the construction, interpretation, implementation, and enforcement of the final judgment and/or this Settlement Agreement, until each and every act agreed to be performed by the Parties thereunder has in fact been fully performed.

## VI. MISCELLANEOUS PROVISIONS

6.01. **Each Party Is Represented by Counsel**. The Parties acknowledge to each other that each has been advised and is represented by legal counsel of their own choice throughout all of the negotiations which preceded the execution of this Settlement Agreement, and that they have executed this Settlement Agreement after being so advised and without reliance upon any promise or representation of any person or persons acting for or on behalf of the other, except as expressly set forth in this Settlement Agreement. The Parties further acknowledge that they and their counsel have had an adequate opportunity to make whatever investigation or inquiry they may deem necessary or desirable in connection with the subject matter of this Settlement Agreement prior to its execution. Each Party has read and

approved the language of this Settlement Agreement, with the assistance of counsel.

6.02. **Entire Settlement Agreement/Construction And Interpretation**. This Settlement Agreement embodies the entire agreement and understanding between the Parties hereto and supersedes all prior or contemporaneous agreements and understandings relating to the subject matter hereof. No course of prior dealing between the Parties, no usage of the trade, and no extrinsic evidence of any nature shall be used or be relevant to supplement, explain or modify any term used herein. The Parties represent and warrant that they are not relying on any other party for advice. This Settlement Agreement is a product of negotiation and preparation by and among each Party and their attorneys. Therefore, each Party expressly waives the provisions of California Civil Code §1654 and acknowledges and agrees that this Settlement Agreement should not be deemed prepared or drafted by one Party or the other and shall be construed accordingly.

6.03. **Effect of Settlement Agreement if Final Approval Does Not Occur.** This Settlement Agreement was entered into for purposes of settlement only. In the event that final approval of this settlement and this Settlement Agreement does not occur for any reason, then no term or condition of this Settlement Agreement, or any draft thereof, or of the discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in this Action, or in any other proceeding. Furthermore, any evidence relating to this Settlement Agreement, other than that obtained through ordinary discovery procedures or from third-party sources by the litigants which may be offered in support of the settlement, shall be deemed privileged pursuant to California Evidence Code §1152 and/or Federal Rule of Evidence 408.

6.04. **Counterpart Originals**. This Settlement Agreement may be executed in any number of counterparts, all of which taken together shall constitute one agreement.

6.05. **Modification Only In Writing**. Neither this Settlement Agreement nor any provision hereof may be changed, waived, discharged or terminated, save and except by an instrument in writing signed by the Party against whom enforcement of the change, waiver, discharge or termination is sought.

6.06. **Headings**. Captions, section headings and numbers have been set forth in this Settlement Agreement for convenience only and are not to be used in construing this Settlement Agreement.

6.07. **Governing Law**. This Agreement shall be governed and interpreted under California law.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.


ANDERSON, OGILVIE & BREWER LLP

DATED: _____   By: _____
Attorneys for the Settlement Class

MICHAEL E. LINDSEY

DATED: _____   By: _____
Attorney for the Settlement Class


**AGREED TO AND ACCEPTED:**


DATED: _____   _____
Jose Luis Aguayo, Class Representative

U.S. BANK NATIONAL ASSOCIATION

DATED: _____   By: _____
U.S. Bank's _____


**APPROVED AS TO FORM:**


MORRISON FOERSTER LLP

DATED: 12/16/2016   By: _____
Attorneys for U.S. Bank


21

6.07. **Governing Law**. This Agreement shall be governed and interpreted under California law.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.


ANDERSON, OGILVIE & BREWER LLP

DATED: _____   By: _____
Attorneys for the Settlement Class

MICHAEL E. LINDSEY

DATED: _____   By: _____
Attorney for the Settlement Class


**AGREED TO AND ACCEPTED:**

DATED: _____   _____
Jose Luis Aguayo, Class Representative

U.S. BANK NATIONAL ASSOCIATION

DATED: _12/16/16__   By: _____
U.S. Bank's _____


**APPROVED AS TO FORM:**

MORRISON FOERSTER LLP

DATED: _____   By: _____
Attorneys for U.S. Bank

21

6.07. **Governing Law**. This Agreement shall be governed and interpreted under California law.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.


ANDERSON, OGILVIE & BREWER LLP

DATED: _12 | 16 | 16_    By: _____
Attorneys for the Settlement Class

MICHAEL E. LINDSEY

DATED: _____    By: _____
Attorney for the Settlement Class


**AGREED TO AND ACCEPTED:**

DATED: _____    _____
Jose Luis Aguayo, Class Representative

U.S. BANK NATIONAL ASSOCIATION

DATED: _____    By: _____
U.S. Bank's _____


**APPROVED AS TO FORM:**

MORRISON FOERSTER LLP

DATED: _____    By: _____
Attorneys for U.S. Bank

6.07. **Governing Law**. This Agreement shall be governed and interpreted under California law.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.

ANDERSON, OGILVIE & BREWER LLP

DATED: _____     By: _____
                           Attorneys for the Settlement Class

MICHAEL E. LINDSEY

DATED: _____     By: _____
                           Attorney for the Settlement Class

**AGREED TO AND ACCEPTED:**

DATED: 4/16/2016     _____
                     Jose Luis Aguayo, Class Representative

U.S. BANK NATIONAL ASSOCIATION

DATED: _____     By: _____
                           U.S. Bank's _____

**APPROVED AS TO FORM:**

MORRISON FOERSTER LLP

DATED: _____     By: _____
                           Attorneys for U.S. Bank

21

6.07. **Governing Law**. This Agreement shall be governed and interpreted under California law.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.

ANDERSON, OGILVIE & BREWER LLP

DATED: _____ By: _____
Attorneys for the Settlement Class

MICHAEL E. LINDSEY

DATED: _12/16/16_ By: _____
Attorney for the Settlement Class

**AGREED TO AND ACCEPTED:**

DATED: _____ _____
Jose Luis Aguayo, Class Representative

U.S. BANK NATIONAL ASSOCIATION

DATED: _____ By: _____
U.S. Bank's _____

**APPROVED AS TO FORM:**

MORRISON FOERSTER LLP

DATED: _____ By: _____
Attorneys for U.S. Bank

21