UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE AGUAYO, individually and on behaLf of similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>U.S. BANK,<br><br>          Defendant. | Case No.:  08-CV-2139 W (BLM)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY'S FEES AND COSTS [DOC. 215]**<br><br>**[FINAL APPROVAL HEARING: July 10, 2017 at 10:30 a.m.]** |

  On May 4, 2017, Plaintiff Jose Aguayo filed a motion requesting, in accordance with the Settlement Agreement: (1) final approval of the class action settlement; (2) an award of fees, expenses, and costs to the Class Counsel; and (3) a service award to Plaintiff Jose Aguayo.  Defendant U. S. Bank did not oppose Plaintiff's motion.

  The Court held a hearing on the matter on July 10, 2017.  Carol Brewer and Michael Lindsey appeared on behalf of Plaintiff.  James McGuire appeared on behalf of Defendant.  After considering Plaintiff's motion and the Parties' argument, the Court **GRANTS** the motion [Doc. 215] for final approval of the class action settlement and

$2,400,000 award of fees, expenses, and costs to the class counsel; and **GRANTS** the request for a $10,000 service award to Plaintiff Jose Aguayo.

I.  **BACKGROUND**

In July 2008, Plaintiff Jose Aguayo commenced this action in the San Diego Superior Court on behalf of himself and a proposed class.  Plaintiff claimed Defendant U.S. Bank had engaged in unlawful, unfair and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., predicated on alleged violations of California's Rees-Levering Automobile Sale Finance Act, Civil Code §§ 2981 *et seq*. ("Rees-Levering").  Plaintiff alleged that the form of the post-repossession notice ("NOI") U.S. Bank sent to members of the proposed class did not comply with Rees-Levering's requirements because, *inter alia*, it did not list all the conditions precedent to reinstate a vehicle contract after repossession.  Because Rees-Levering, Cal. Civil Code § 2983.2(a), specifies that a creditor may obtain a deficiency against a defaulting consumer "only if" the NOI meets all of Rees-Levering's requirements, Plaintiff sought declaratory relief stating that he and the proposed class did not owe any Deficiency Balances to U.S. Bank.  He also sought restitution based on the amount each class member paid on Deficiency Balances during the class period, as well as interest or profits, injunctive relief, and attorneys' fees and costs.

U.S. Bank removed the case to this Court under the Class Action Fairness Act.  On September 24, 2009, the Court dismissed Plaintiff's claims, finding the National Bank Act and regulations promulgated thereunder preempted the application of California law to Plaintiff's claims.  (*See Order Granting U.S. Bank's Motion to Dismiss* [Doc. 30].)  The Ninth Circuit subsequently reversed the dismissal.  See Aguayo v. U.S. Bank, 653 F.3d 912 (9th Cir. 2011).  Upon remand, U.S. Bank later argued the case was barred under the conflict preemption doctrine (*see Opp. to Pls' MSJ* [Doc. 181], 22:13–25:15), which this Court rejected (*see Order on Pls' MSJ* [Doc. 187] 4:26–8:15).

On January 6, 2015, this Court granted Plaintiff's motion to certify the Class, which is defined as follows:[1]

> All California consumer residents (who purchased a motor vehicle for use primarily for personal or household purposes and whose loan documentation does not include an arbitration clause) to whom U.S. Bank sent post-repossession notices of intent to dispose (NOIs) between August 1, 2004 and April 22, 2014, whose vehicles were sold or otherwise disposed of after repossession or voluntary surrender, who U.S. Bank asserts are liable to it for a deficiency balance, against whom U.S. Bank has not obtained a judgment, and who have not had U.S. Bank's deficiency claim discharged in bankruptcy.

Class Members were given notice and an opportunity to opt out. (*See Notice of Completion of Class Notice* [Doc. 179].) The opt-out period expired in December 2015.

In May 2016, the Court ruled that U.S. Bank's NOIs did not comply with Civil Code § 2983.2(a)(2). (*Order on Pls' MSJ*, 14:25–26.) The Court also determined that U.S. Bank's practices of collecting and attempting to collect Deficiency Balance Payments from Class Members was unlawful. (*Id.*, 14:26–15:2.) Accordingly, the Court entered declaratory judgment, ruling that U.S. Bank's deficiency claims against Class Members were invalid, void and unenforceable and that Class Members are not liable to U.S. Bank for the Deficiency Balances. (*Id.* 15:3–5.) Additionally, the Court entered an injunction against U.S. Bank, prohibiting it from collecting any further Deficiency Balance Payments from Class Members. (*Id.* 15:5–7.) Finally, the Court ruled in August 2016 that under California law, Plaintiff and Class Members were entitled to the profits that U.S. Bank earned from their Deficiency Balance Payments, to the extent that Plaintiff could produce at trial evidence permitting a reasonable approximation of the

---

[1] Based on issues U.S. Bank raised in its opposition to the class certification motion, the order granting Plaintiff's motion for class certification ordered the parties to submit additional briefing regarding the class definition. (*Class Cert. Order* [Doc. 143], 19:2–8.) The definition was then confirmed on April 1, 2015. (*Order (1) Denying U.S. Bank's Mt. for Recon. and (2) Confirming Class Definition* [Doc. 162] 3:4–9.) On August 31, 2015, this Court granted the parties' joint motion to amend the class period to "between August 1, 2004 and April 22, 2014." (*Amend. Order Granting Jt. Mt. to Amend Class Definition* [Doc. 178], 1:21–22.)

amount of the wrongful gain. (*Order re. Proper Measure of Restitution* [Doc. 197], 4:18–20.) Following that ruling, the parties reached a settlement in principle.

On or about December 16, 2016, the parties executed a Settlement Agreement, a copy which is attached to Plaintiff's motion. (*See Exhibit 1* [Doc. 211-2], attached to the *Prelim Approval Motion* [Doc. 211].) Under the proposed settlement, U.S. Bank will provide a non-revertible fund of $4,415,000 to the Settlement Administrator, Rust Consulting, Inc., to provide refunds and certain additional monetary recovery to Refund Eligible Class Members, defined as Class Members who made a Deficiency Balance Payment to U.S. Bank, which payment(s) were not reversed or offset. As of June 2016, U.S. Bank had collected $2,329,167 in Deficiency Balance Payments.

Checks will be sent to each Refund Eligible Class Member without the necessity of claims or claim forms. Refund Eligible Class Members will receive a refund of 100% of the net total of that person's Deficiency Balance Payments, plus their proportionate share of a certain additional monetary recovery, as calculated by Class Counsel's experts and consultants. Refund Eligible Class Members who made deficiency payments early in the class period will recover more than people who paid the same amount later in the class period. Any of the Class Members' checks that remain uncashed at the conclusion of the administration process will be distributed to an appropriate non-profit pursuant to the *cy pres* doctrine. Plaintiff proposes that the uncashed checks go to the East Bay Community Law Center and the San Diego Legal Aid Society. U.S. Bank does not oppose this *cy pres* recipient.

Additionally, U.S. Bank will reduce to $0 the Deficiency Balances on Class Members' accounts and U.S. Bank will provide a declaration under penalty of perjury so affirming. As of December 2016, U.S. Bank said the outstanding Deficiency Balances for the persons defined as Class Members was about $21,604,477. (*Brewer Dec*. [Doc. 211-6], ¶¶ 4–5.) U.S. Bank also agrees to provide the following relief: (a) it will instruct the credit bureaus to which it reports to delete the tradelines for Class Members' accounts with regard to the Conditional Sale Contract accounts at issue in the Action; (b) it will

pay the reasonable costs of settlement administration, to be handled by Rust Consulting, Inc.; (c) it will not issue Form 1099s to Class Members for the refund of any Deficiency Balance Payments that they made, although it may issue Form 1099s to Refund Eligible Class Members for the amount their checks exceed the amount of Deficiency Balance Payments that Class Members made to U.S. Bank; (d) it will not issue Form 1099s to Class Members for the reduction to $0 of their Deficiency Balances; and (e) in response to any inquiries about Class Members' account balances, it will say the balance is $0.

Finally, U.S. Bank will pay, separate and apart from the amount to fund payments to Class Members, Class Counsel's attorney's fees, costs, and expenses, not to exceed $2,400,000; and a service award to Plaintiff, not to exceed $10,000. These proposed awards are separate and apart from the benefits to the Class Members. The attorneys' fees were negotiated separately from the relief to the class and do not diminish or affect the class members' relief. (*Brewer Dec*. [Doc. 211-6] ¶ 25.) In exchange for these awards, each Settlement Class member will release U.S. Bank from all claims arising out of or in connection with the claims that Plaintiff made in his Complaint or which reasonably could have been asserted by the Class in this Action. Plaintiff will provide a broader general release.

On January 30, 2017, this Court entered an Order preliminarily approving the settlement, approving Settlement Notice, scheduling a final Fairness Hearing and scheduling dates for Class Members to object to the proposed settlement. (*See Prelim. Approval Order* [Doc. 213].) The proposed settlement includes the members of the Certified Class defined above.

II. **DISCUSSION**

The decision to approve or reject a settlement is committed to the sound discretion of the trial court. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Deciding whether to approve a proposed class action settlement is generally a two-step process. At the preliminary approval stage, the court "should make a preliminary

5

08-CV-2139 W (BLM)

1  determination that the proposed class satisfies the criteria set out in Rule 23(a) and at
2  least one of the subsections of Rule 23(b)." Fed. Judicial Ctr., Manual for Complex
3  Litigation, § 21.633 (4th ed. 2004). The court then approves the form and manner of
4  notice and sets a final fairness hearing, where it will make a final determination on the
5  fairness of the class settlement. See id.

6  A court may approve a settlement that would bind class members only after a final
7  fairness hearing and finding that the settlement is fair, reasonable and adequate. Fed. R.
8  Civ. Proc. 23(e)(2); see Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).
9  When approving a settlement, a court must ensure that notice is made in a "reasonable
10 manner to all class members who would be bound by the proposal." Fed. R. Civ. Proc.
11 23(e)(1).

12 To make the ultimate determination of whether a settlement is fair, reasonable and
13 adequate requires evaluating several factors, including: the strength of plaintiff's case; the
14 risk, expense, complexity, and likely duration of further litigation; the risk of maintaining
15 class action status throughout the trial; the amount offered in settlement; the extent of
16 discovery completed, and the stage of the proceedings; the experience and views of
17 counsel; the presence of a governmental participant; and the reaction of the class
18 members to the proposed settlement. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370,
19 1375 (9th Cir. 1993). Settlements that follow sufficient discovery and genuine arms-
20 length negotiation are presumed fair. Nat'l Rural Telcoms. Coop. v. Directv, Inc., 221
21 F.R.D. 523, 528 (C.D. Cal. 2004).

22 After reviewing the First Amended Complaint, Plaintiff's unopposed motion and
23 the Settlement Agreement, **IT IS HEREBY ORDERED THAT:**

24 1. This Final Approval Order incorporates by reference the definitions in the
25 Settlement Agreement, and all terms used herein shall have the same meanings as set
26 forth in the Settlement Agreement, unless otherwise noted.

27 2. The Court has jurisdiction over the subject matter and personal jurisdiction
28 over all the Parties, including all Class Members.

3. Pursuant to Federal Rule of Civil Procedure 23, and consistent with due process, the Court hereby approves the Settlement Agreement and finds that the consideration to be paid pursuant to the Settlement Agreement is fair and that the Settlement is, in all respects, fair, just, reasonable and adequate to the Settlement Class Members, and the Parties are hereby directed to perform its terms.

4. The Court notes that the Class was certified in January 2015 (*Class Cert. Order* [Doc. 143]) and later the class definition was amended (*Amend. Order Granting Jt. Mt. to Amend Class Definition* [Doc. 178]); that Class Counsel provided Class Notice and an opportunity to opt out, which this Court approved as the best notice practicable and compliant with the requirements of the Federal Rules of Civil Procedure and due process (*Order Approving Class Notice* [Doc. 175]); and that the opt-out period expired in December 2015 (*Notice of Completion of Class Notice* [Doc. 179]).

5. The Court finds that the Settlement Notice provided to Class Members was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and any other applicable laws.

6. In accordance with the terms of the Settlement Agreement, by not later than the Distribution Date, U.S. Bank shall provide the following relief to all Class Members:

    a. U.S. Bank shall reduce to $0 the Deficiency Balance on Class Members' accounts.

    b. To the extent it has not done so already, U.S. Bank shall take all actions necessary to cease all efforts to collect Deficiency Balances from Class Members.

    c. U.S. Bank will not issue Form 1099s to Class Members, either for the refund of any Deficiency Balance Payments that Class Members have made or for the reduction to $0 of the Deficiency Balances in Class Members' accounts with U.S. Bank.

        d.      U.S. Bank shall submit requests to the credit bureaus to which it reports to delete the Class Members' tradelines with respect to the Conditional Sale Contract accounts at issue in the Action.

        e.      U.S. Bank shall respond to any inquiries from Class Members regarding their Accounts by informing them that the account balance is zero. In addition, U.S. Bank shall, upon individual request, and one time only, provide Class Members with a letter to that effect.

7.      Within ten (10) business days after the date of Final Approval, U.S. Bank shall remit $4,415,000 to the Settlement Administrator to provide refunds and a certain additional monetary recovery to the Class Members, in accordance with the Plan of Distribution in the Settlement Agreement. The Settlement Administrator shall mail checks in that amount directly to the Refund Eligible Class Members, on the Distribution Date or as soon thereafter as practicable per the Settlement Agreement. U.S. Bank shall separately pay for notice and administration expenses to the Settlement Administrator.

8.      The Settlement Administrator shall distribute an incentive award to the Settlement Class Representative, Jose Aguayo of $10,000. The Court approves this distribution. U.S. Bank shall make this payment in addition to the amount to be distributed to the Class pursuant to paragraph 7 above no later than the Distribution Date per the Settlement Agreement.

9.      U.S. Bank shall pay Class Counsel an award of attorney's fees, costs and litigation expenses totaling $2,400,000, no later than the Distribution Date per the Settlement Agreement.  After deducting expenses of about $52,154.50, this award amounts to Class Counsel's lodestar of about $2,171,973.55 with a multiplier of 1.08. This award is appropriate given 1) the contingent nature of this case; and 2) the superior results obtained for the Class. The Court also notes that this award amounts to about 34% of the common fund created by the cash portion of the settlement, consisting of the fund to be refunded to the Class, Class Counsel's fees, expenses, and costs, and the incentive award to Mr. Aguayo.

8

08-CV-2139 W (BLM)

10. The Court also notes that the Class will receive—and has already received—substantial non-monetary benefits. The Court previously issued an injunction barring U.S. Bank from collecting on Deficiency Balance Payments (*see Order on Pls' MSJ* [Doc. 187]).  In addition, by this Settlement, U.S. Bank has agreed to reduce to $0 the Deficiency Balances on Class Members' accounts and to request that the Consumer Reporting Agencies to which it reports delete tradelines representing deficiencies of approximately $21.6 million.

11. The Court therefore approves this award of attorneys' fees.  There were no objections to Class Counsel's request for approval of attorneys' fees and expenses.

12. The Court approves *cy pres* awards of any amount of the Class Members' checks that remain uncashed at the conclusion of the administration process, to be distributed to the East Bay Community Law Center and the San Diego Legal Aid Society. The Settlement Administrator will distribute those funds directly to the recipients.

13. The Court hereby **DISMISSES WITH PREJUDICE** on the merits and without costs or attorneys' fees (except as otherwise provided herein) the above-captioned action.  The Court will retain jurisdiction to enforce the Settlement.

14. The Released Parties include U.S. Bank and its present, former and future officers, directors, partners, employees, agents, attorneys, servants, heirs, administrators, executors, members, member entities, shareholders, predecessors, successors, affiliates, subsidiaries, parents, representatives, trustees, principals, insurers, vendors and assigns, individually, jointly and severally.

15. Plaintiff and each Settlement Class Member have released any and all claims, liens, demands, causes of action, obligations, damages and liabilities, known or unknown, that Certified Class Members have, had in the past, now have, or may have in the future against the Released Parties, that were or could have been raised based upon the facts alleged in the Action against the Released Parties or that arise directly or indirectly out of any such claims; this release includes, but is not limited to, any claims arising out of U.S. Bank's sending of an NOI, the content of the NOI, the assertion of a

deficiency following repossession, the collection or attempted collection of the deficiency, and the reporting to credit bureaus of the amounts remaining on the account after repossession. The Release binds the Class Members as well as anyone purporting to act on their behalf, including their heirs, spouses, executors, administrators, successors, assigns or agents.  The Released Claims include all claimed or unclaimed compensatory, statutory, consequential or punitive damages, as well as all claims for equitable, declaratory or injunctive relief.  Released Claims also include all interest, costs and attorneys' fees.

16.	Without limiting the foregoing, Plaintiff Jose Aguayo and his spouse, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from all claims relating to any and all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, whether arising under local, state or federal law, whether by Constitution, statute (including, but not limited to, the Rees-Levering Act), tort, contract, common law or equity or otherwise, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent, that have been or could have been asserted against the Released Parties by the Plaintiff on or any time prior to the Effective Date. These additional Claims released by the Plaintiff include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged based on the facts forming the basis for this Action.  Plaintiff's Released Claims further include interest, costs and attorneys' fees arising out of any of

the claims asserted or that could have been asserted.  Plaintiff acknowledges that he is aware that he may hereafter discover facts in addition to or different from those that he or Plaintiff's Counsel now know or believe to be true with respect to the subject matter of these releases, but he is deemed to have fully, finally and forever settled and released any and all of the claims described in Paragraphs 16 and 17 herein, without regard to the subsequent discovery or existence of such different or additional facts.  Plaintiff is deemed to have waived any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Plaintiff is deemed to understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases.

17.   The Released Parties may file the Settlement Agreement and/or this Final Approval Order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

18.   U.S. Bank shall not issue 1099 forms to Class Members either for the refund of any Deficiency Balance Payments that Class Members paid or for the reduction to $0 of the Deficiency Balances on Class Members' accounts.

19.   The parties have agreed, and the Court hereby orders, that no Refund Eligible Settlement Class Member has a vested interest in any amount to be paid to him or her under this settlement unless and until he or she has cashed a settlement check.

20. The Court shall retain jurisdiction over the effectuation and implementation of the Settlement Agreement and the Settlement following Final Approval. The Parties and their attorneys submit to the jurisdiction of the Court regarding these matters.

21. If an appeal, writ proceeding or other challenge is filed as to this Final Approval Order, and if thereafter the Final Approval Order is not ultimately upheld, all orders entered, stipulations made and releases delivered in connection herewith, or in the Settlement Agreement or in connection therewith, shall be null and void to the extent provided by and in accordance with the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: July 10, 2017

_____
Hon. Thomas J. Whelan
United States District Judge